SYBARITIC, INC.; a Minnesota Corporation, Appellant,

v.

INTERPORT INTERNATIONAL, INC.; a California Corporation, Appellee.

No. 91–1032.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1991.

Decided Feb. 19, 1992.

John M. Baker, Minneapolis, Minn., argued (Ronald E. Berglund, Monticello, Minn., appeared on the brief), for appellant.

John F. Beukema, Minneapolis, Minn., argued (Mark D. Savin, on the brief), for appellee.

Before LAY,* Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

---

* The Honorable Donald P. Lay was Chief Judge    of the United States Court of Appeals for the

McMILLIAN, Circuit Judge.

Sybaritic, Inc. ("Sybaritic") appeals from a final order entered in the United States District Court [1] for the District of Minnesota dismissing its action against Interport International, Inc. ("Interport") on grounds of lack of personal jurisdiction. *Sybaritic, Inc. v. Interport Int'l, Inc.*, No. 4–90–575 (D.Minn. Nov. 6, 1990) (memorandum opinion and order). Sybaritic argues on appeal that the district court has personal jurisdiction over Interport under both Minnesota's long-arm statutes and the constitutional requirements of due process. For the reasons discussed below, we affirm the order of the district court.

Sybaritic is a South Dakota corporation with its principal place of business in Minneapolis, Minnesota. Sybaritic manufactures and markets fitness equipment and relaxation products. Interport is a California corporation with its principal place of business in Newport Beach, California. Interport's business involves exporting or assisting manufacturers in exporting American products to Asia, including Japan.

In 1989, the president of Interport, Carl T. Brown, responded to an advertisement regarding a face-lift product called "the Swedish Miracle," featured in a magazine of nationwide distribution. In response to Brown's inquiry, Sybaritic sent Interport information on this and other Sybaritic products, including materials on the Vibrosaun Body Conditioner System (massage equipment). Brown then telephoned Sybaritic seeking further information on the Vibrosaun product. In response, Sybaritic invited Brown to Minnesota to inspect its products and facilities.

In December 1989, Brown visited Sybaritic's Minnesota facilities. The visit lasted approximately two days. It was the only time a representative of Interport was physically present in Minnesota. During the December 1989 visit, Brown and representatives of Sybaritic apparently discussed the possibility of entering a business relationship; however, the exact nature of those discussions is in dispute. According to Sybaritic, Brown "solicited the business of Sybaritic and requested that Sybaritic engage in business with Interport's Japanese customers and contacts for sales to Japan." Interport describes Brown's activities in Minnesota as "general discussions about the two companies." Sybaritic alleges that Brown and Sybaritic engaged in "[n]egotiations concerning purchase, purchase price and agent or distribution rights for [Sybaritic products] for Japan sales." Interport states that "[n]o contract was proposed; no contract terms were discussed; no contract drafts were prepared."

In the months following Brown's visit to Minnesota, the parties continued to communicate by telephone and mail. Through these communications, the parties discussed the possibility of having Interport act as Sybaritic's agent in Japan. They decided to meet in Tokyo.

The Tokyo meeting took place in April 1990. The parties negotiated, drafted and apparently executed a written document entitled "Agency Agreement." [2] This document apparently contemplated that Interport would act as Sybaritic's sales agent in Japan, in exchange for a ten percent commission on sales.

In July 1990, Sybaritic brought this action in Minnesota state court seeking a declaration that no agency contract exists between Sybaritic and Interport and seeking damages arising from its business transactions with Interport. Shortly thereafter, Interport removed to federal district court in Minnesota on grounds of diversity of citizenship; Interport simultaneously moved to dismiss on grounds of lack of

Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

**1.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

**2.** The validity of this agreement is the basis of

personal jurisdiction.[3] On November 6, 1990, the district court dismissed this action without prejudice on grounds of lack of personal jurisdiction. *Sybaritic Inc. v. Interport Int'l, Inc.,* No. 4–90–575 (D.Minn. Nov. 6, 1990) (memorandum opinion and order) (hereinafter "slip op."). This appeal followed.

Sybaritic argues on appeal that the district court has personal jurisdiction over Interport under both Minnesota's long-arm statutes and the constitutional requirements of due process. On consideration of Interport's motion to dismiss, the district court viewed the facts in the light most favorable to Sybaritic and held that the court lacked personal jurisdiction over Interport under the constitutional requirements of due process. We agree with the district court's analysis of the constitutional issue. Thus, we need not consider whether Interport is also beyond Minnesota's long-arm jurisdiction.[4]

In considering whether a court's exercise of personal jurisdiction comports with the requirements of due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (*Burger King*) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*International Shoe*)). In making this determination, the court considers whether the defendant's conduct and connection with the forum State are such that the defendant should reasonably anticipate being haled into court in the forum State. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (citations omitted). A foreign defendant

may not be haled into court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Id.* at 475, 105 S.Ct. at 2183 (citations omitted). Even if the defendant has purposefully established the necessary "minimum contacts" within the forum State, consideration of "fair play and substantial justice" may nevertheless defeat the reasonableness of jurisdiction. *Id.* at 476–78, 105 S.Ct. at 2184–85 (citations omitted).

In *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369 (8th Cir.1990) (*Falkirk Mining*), we explained that the determination of whether personal jurisdiction comports with due process may be guided by a careful consideration of the following five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id.* at 374 (citing *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir. 1983)). This analytical framework incorporates the notions of both "minimum contacts" and "fair play and substantial justice." *Falkirk Mining,* 906 F.2d at 373–74.

Consistent with the analytical framework described above, the district court considered the nature, quality and quantity of Interport's contacts with Minnesota, particularly in relation to the cause of action arising out of the "Agency Agreement." Viewing the facts in the light most favorable to Sybaritic, the district court found

---

the underlying dispute; Sybaritic claims that the agreement was not properly executed.

**3.** Interport also filed a separate action in federal district court in California, alleging, inter alia, breach of contract arising out of the same agency agreement that is at issue in this case. *Interport Int'l, Inc. v. Sybaritic, Inc.,* No. CV–90–3677 (C.D.Cal. July 16, 1990).

**4.** Sections 303.13(1)(3) and 543.19(1)(b) of the Minnesota Statutes are the pertinent long-arm

provisions. Both have been interpreted to extend long-arm jurisdiction to the full extent of the constitutional limit. *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267, 1269 (8th Cir.1978) ("[I]t is clear that Minnesota's long-arm statutes, Minn.Stat.Ann. §§ 303.13 and 543.19, authorize the assertion of jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process."). Thus, in determining whether long-arm jurisdiction exists, we ultimately would apply the same analysis as that which is applied under due process.

that Interport's contacts with the forum State, including Brown's December 1989 trip to Minnesota and the subsequent telephone and mail communications between Interport in California and Sybaritic in Minnesota, were too few in number and too attenuated from the cause of action to support jurisdiction. By Sybaritic's own admission, the Agency Agreement "was negotiated, drafted, presented and executed in Japan."[5] By contrast, Interport's few contacts with Minnesota involved only preliminary negotiations. The district court found that other Minnesota-based activities highlighted by Sybaritic (e.g., manufacture of product, origination of payments) were more appropriately treated as unilateral acts not related to the cause of action; the agreement that is at the heart of this dispute deals only with the proposed agency relationship. The district court further reasoned that neither the convenience of the parties nor judicial economy would be advanced by exercising jurisdiction because Minnesota is not necessarily closer than California to the relevant parties, witnesses and key documents, many of which are in California or Japan. Finally, although Minnesota does have an interest in providing a forum for its residents, the district court concluded that Minnesota's interest is not enough to overcome the overall absence of sufficient "minimum contacts" to meet the standards of due process. Slip op. at 6–8.

We agree with the district court's analysis. Accordingly, we affirm.

---

**5.** Slip op. at 7 (citing affidavit of Steven J. Daffner, president of Sybaritic).