**Alejandro MARTINEZ, Appellant,**

v.

**ARROW TRUCK SALES, INC., Appellee.**

**No. 87–1121.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Oct. 27, 1989.

Russell Dameron, Kansas City, Mo., for appellant.

William M. Modrcin, Kansas City, Mo., for appellee.

Before FAGG, Circuit Judge,
HEANEY, Senior Circuit Judge, and
BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Alejandro Martinez appeals the district court's grant of defendant Arrow Truck Sales, Inc.'s (Arrow) motion for judgment notwithstanding the verdict in Martinez's breach of contract action against Arrow. We reverse and remand for a new trial.

## BACKGROUND

Martinez, a Peruvian national, engages in the import-export business. Arrow sells used commercial trucks in the United States and abroad. In 1982, Arrow entered into an agreement with Claude Amar under which Amar became an independent salesman in Arrow's international sales division.

Amar is fluent in six languages, including Spanish. Martinez first learned of Arrow's international truck sales business in the early 1980s from an advertisement sent to the American Consulate in Peru. In 1982, Martinez contacted Arrow in an unsuccessful attempt to purchase used trucks for a Peruvian client. Arrow sales staff referred Martinez to Amar as director of Arrow's international sales. Amar and Martinez engaged in several business dealings independent of Arrow, including the purchase of cars at an auction and the acquisition of heavy equipment for export to South America. Additionally, the two men discussed importing Peruvian goods into the United States for resale.

In December 1983, Martinez contacted Amar at Arrow concerning the purchase of a new truck for export to Peru. Arrow deals solely in used trucks. Amar nonetheless agreed to find a new truck for Martinez. Amar stated that they could order the truck through Arrow from another company. Martinez did not discuss the transaction with any other Arrow personnel. In January and March 1984, Martinez paid Amar a total of $23,269.00 for the new truck. Martinez never received the truck, however, and was unable thereafter to locate Amar either at Arrow or at Amar's home.

Martinez filed this diversity action against Arrow and Amar for fraud, conversion, and breach of contract. Arrow crossclaimed against Amar for indemnity. The case was submitted to the jury only on the breach of contract theory against Arrow based on Amar's apparent authority to bind Arrow. Both the fraud and breach of contract claims against Amar were submitted to the jury. The jury found against both defendants and assessed actual damages of $35,987.32 and punitive damages of $75,-000.00 against Amar only. On Arrow's crossclaim against Amar, the jury found for Arrow in the amount of $110,987.32, the total of the actual and punitive damages.[1]

---

1. The verdicts were inconsistent in allowing Arrow to recover more on its crossclaim than it was held liable for to Martinez. The district court noted additionally that the evidence did not support the amount of actual damages.

Amar moved for a new trial and Arrow moved for JNOV, or in the alternative, a new trial. The district court granted both motions, finding that reasonable people could not differ in concluding that Amar had neither actual nor apparent authority to bind Arrow to a contract with Martinez.[2] Martinez appealed the JNOV in favor of Arrow on June 27, 1986, and also appealed the district court's refusal to admit certain documents and declarations of Amar on the issue of Amar's agency. Martinez did not appeal the district court's alternative grant of a new trial to Arrow or its grant of a new trial to Amar. Because the district court had granted Amar a new trial, this court instructed Martinez to seek certification of the order appealed from as final under Federal Rule of Civil Procedure 54(b). The district court entered a 54(b) certification as to the grant of JNOV on December 4, 1986.

Arrow moved to dismiss Martinez's appeal, asserting that this court lacked jurisdiction because Martinez failed to file a second notice of appeal following the 54(b) certification. Martinez argued that his otherwise premature notice of appeal, filed on June 27, 1986, was validated by the subsequent 54(b) certification. This panel agreed with Martinez and allowed the appeal to proceed on the merits. *Martinez v. Arrow Truck Sales, Inc.*, 865 F.2d 160, 162 (8th Cir.1988) (per curiam).

## I.

The standard this court must apply in passing on a motion for JNOV is the same as that the district court applies. *Cleverly v. Western Elec. Co.*, 594 F.2d 638, 641 (8th Cir.1979). Under the standard:

'[t]he evidence, together with all reasonable inferences to be drawn therefrom, must be considered in the light most favorable to the plaintiff as the party prevailing with the jury * * * The court may not weigh the evidence or assess the credibility of witnesses. * * * The mo-

tion must be denied if, reviewing the evidence in this light, reasonable persons could differ as to the conclusions to be drawn from it. * * * a motion for JNOV may be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the jury's verdict.'

*Burger v. McGilley Memorial Chapels, Inc.*, 856 F.2d 1046, 1048–49 (8th Cir.1988) (citations omitted).

Under Missouri law, apparent authority " 'results from a manifestation by the supposed principal that another is his agent.' " *Philp v. Minnesota Mut. Life Ins. Co.*, 657 S.W.2d 679, 682 (Mo.Ct.App.1983) (quoting *Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 13 (Mo.1970)). The manifestation must be made to a third person, and that person must believe or have reason to believe that the authority exists. *Id.*

Applying these standards to the record, we must respectfully disagree with the district court's conclusion that reasonable people could not differ on the question whether Amar had the apparent authority to bind Arrow in a contract with Martinez. The facts of the transaction between Martinez and Amar raise several reasonable inferences that Amar had the apparent authority to bind Arrow in the sale of a new truck.

Arrow provided Amar with office space on its premises, a telephone, use of a telex, stationery with Arrow letterhead, business cards bearing the title of Director of International Sales of Arrow, retail and wholesale brochures for Arrow trucks, and money for postage and advertising in foreign publications. Arrow referred all its prospective foreign customers to Amar.

In the transaction in question, Martinez approached Amar regarding the purchase of a new truck in December 1983. In January 1984, Martinez gave Amar $4067.00 as a down payment on the new truck at Amar's office at Arrow. In return, Amar gave Martinez a check in the same amount

---

**2.** The district court found that the verdict against Arrow was against the greater weight of the credible evidence in the case, and in the alternative, granted Arrow a new trial. The

district court found that the verdict against Amar demonstrated that the jury had been confused by the jury instructions, and granted Amar a new trial.

drawn on Amar's private account entitled "Entertainment 26." Martinez was aware that "Entertainment 26" was one of Amar's private concerns, but testified that when he received the check, he assumed that the account name was the name of the bank on which the check was written, because Peruvian checks ordinarily have the name of the drawee placed at the top of the check form. This check was to serve as a receipt and guarantee for partial payment on the $27,114.00 purchase price of the truck. Amar also gave Martinez a purchase order from Midway Ford showing a $3067.00 down payment with Martinez's name as purchaser. Arrow's name had originally been filled in as purchaser, but a line had been drawn through it. A Midway Ford salesman testified that he had assumed initially that Amar was purchasing the truck for Arrow, but later was told by Amar that Martinez was the purchaser. Martinez testified that he thought the $1000 discrepancy between the payment he had made to Amar and the down payment listed on the purchase order was part of Amar's commission for the sale.

In March 1984, at a Kansas City bank, Martinez paid Amar $19,202.00 and received a check on the "Entertainment 26" account in the same amount from Amar as a receipt. Martinez provided the remainder of the new truck's purchase price in the form of a used pickup truck located in Florida, which Martinez valued at $3500.00. Martinez never received the Midway Ford truck described on the purchase order Amar gave him. In August and September 1984, Martinez attempted to locate Amar unsuccessfully at Arrow and at Amar's home. Martinez sought a return of his deposit from the president of Arrow, but was refused. Midway Ford refunded Martinez's $3067.00 down payment. Martinez attempted to cash the "Entertainment 26" checks Amar had given him as receipts for his deposit, but the account contained insufficient funds to cover the instruments.

Despite these facts, the district court concluded that Martinez knew or should have known that Arrow was not engaged in the business of selling new trucks. The record contains no evidence, however, that Martinez ever was informed or actually knew of this fact. Moreover, Arrow's company name does not reveal that its business is limited to used trucks. The district court also noted that the Midway Ford purchase order Martinez received from Amar indicated that Martinez, not Arrow, was the purchaser. The Midway Ford salesman who executed the purchase order, however, testified that he had assumed initially that Amar was purchasing the truck for Arrow. The purchase order thus bore both Arrow's and Martinez's names.

The district court also noted that Martinez made payments on the truck directly to Amar, rather than to Arrow. Although making payments to a salesman rather than to the company he works for is unusual, it is not entirely unreasonable under the facts of the transaction in question. Arrow had led Martinez to believe that Amar was director of its international sales. Additionally, Martinez knew that Amar was acquiring the truck from a company other than Arrow. Under these circumstances, it was not unreasonable for Martinez to make payment directly to Amar.

The district court further found that Martinez did not rely on Arrow to obtain the truck for him because he never contacted anyone at Arrow other than Amar, and he never sought a refund from Arrow. Martinez's failure to discuss the transaction with other Arrow personnel is reasonable in view of Amar's title as Director of International Sales and his status as the sole Spanish-speaking employee of Arrow. Moreover, both Martinez and Jerome Nerman, Arrow's president, testified that Martinez requested a refund from Arrow when he failed to receive the truck.

Certainly, the transactions involving payment by Martinez directly to Amar and Amar's provision of receipt checks drawn on an account that Martinez knew to be personal to Amar suggest that Martinez knew or should have known that he was dealing solely with Amar. Similarly, Martinez's previous dealings with Amar outside the scope of Amar's relationship with Arrow, and Martinez's prior unsuccessful ef-

fort to purchase trucks from Arrow might well have counseled Martinez that he was dealing with Amar on a basis independent of Arrow. Viewing all the evidence in the light most favorable to Martinez, however, we conclude that the district court erred in granting Arrow's motion for JNOV. Because this matter will be retried, Arrow will receive a second chance to persuade a jury that Amar did not act as its agent in his deal with Martinez.

## II.

■ Martinez also appeals the district court's refusal to admit documents and declarations of Amar relating to his status as Arrow's agent. Neither agency nor the scope of agency can be established by the extrajudicial declarations of the alleged agent. *Fielder v. Production Credit Ass'n*, 429 S.W.2d 307, 310 (Mo.Ct.App. 1968). After the party alleging the agency has made a prima facie case of agency against the principal, however, " 'any declarations made by the agent in the prosecution of, and relative to the business contemplated by such agency, are admissible against the principal.' " *Id.* at 311 (citations omitted).

■ Because the evidence at trial was susceptible to reasonable inferences that Martinez believed Amar was acting as Arrow's agent, Amar's statement to Martinez that he would purchase the new truck through Arrow and documents that Amar prepared in the course of their dealings should have been admitted against Arrow.

We conclude that the district court erred in rendering JNOV in favor of Arrow. Additionally, after Martinez had established a prima facie case of Amar's apparent agency against Arrow, Amar's extrajudicial statements and documents relating to his agency should have been admitted against Arrow, the apparent principal. Consequently, we reverse the district court's grant of JNOV and remand the case to the district court for a new trial.

BOWMAN, Circuit Judge, dissenting.

Based on the evidence in this case, it seems clear to me that Martinez was dealing only with Amar, that he knew perfectly well he was dealing only with Amar, and that his attempt to hold Arrow liable is nothing more than a convenient afterthought. More importantly, an experienced and able district judge, intimately familiar with the case, reviewed the evidence and reached a similar conclusion. Because I do not believe the district court erred in concluding that on this evidence a reasonable jury could not find Arrow liable to Martinez, I respectfully dissent from our Court's decision reversing the district court's grant of Arrow's motion for judgment notwithstanding the verdict.