ACAPOLON CORPORATION, Appellant,

v.

RALSTON PURINA COMPANY
and Purina de Guatemala,
S.A., Respondents.

No. 74312.

Supreme Court of Missouri,
En Banc.

March 24, 1992.

Robert E. Kelly, Jr., David J. Ozeran, Los Angeles, for appellant.

Kenton E. Knickmeyer, William G. Guerri, Thomas F. Eagleton, St. Louis, for respondents.

John L. Crenshaw, Michael D. Quinlan, St. Louis, Rita E. Bleser, Chesterfield, Martin P. Zucker, St. Louis, for amicus curiae Mallinckrodt.

BLACKMAR, Judge.

The appellant is a corporation organized under the laws of the Republic of Guatemala. It filed suit against Ralston Purina Company, a Missouri corporation, and Purina de Guatemala, S.A. (PDGSA), a corporation of Guatemala, in the Circuit Court of the City of St. Louis, seeking in eight counts damages on account of allegedly defective and inadequate shrimp feed it purchased from PDGSA for use at its commercial shrimp farm in Guatemala. The trial court sustained Ralston's motion to dismiss under the doctrine of forum non conveniens, and also sustained PDGSA's motion to quash service. The Court of Appeals, Eastern District, reversed and remanded for trial, with one judge dissenting. We granted transfer because of the importance of the questions presented, and now affirm the judgment of the circuit court.

### 1. Forum non Conveniens

The doctrine of forum non conveniens permits dismissal even though jurisdiction and venue are proper. A plaintiff is not lightly to be deprived of the chosen forum but, when the facts of the case show substantial inconvenience, dismissal is appropriate. *Besse v. Missouri Pacific Railroad Co.,* 721 S.W.2d 740 (Mo. banc 1986) *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). A trial judge may decline to proceed with a case if firmly persuaded that trial in the forum would be substantially inconvenient and that an alternate forum is available. *State ex rel. Chicago, Rock Island and Pacific Railroad Co. v. Riederer,* 454 S.W.2d 36 (Mo. banc 1970). We accord deference to the trial court's conclusions in this regard and

review only for abuse of discretion. *Besse,* 721 S.W.2d at 742.

■ This case has predominant foreign elements, and this fact distinguishes it from all other Missouri forum non conveniens cases. To date, our cases have dealt with forum non conveniens as it applies to suits between residents of different states. Other courts have held with some regularity that less deference is accorded the plaintiff's choice in a case brought by a foreign national and in which the bulk of the operative facts took place in a foreign nation.[1] We believe that these holdings are sound, especially when the plaintiff has sought the benefit and protection of the corporation laws of another country. The rule is not actuated by xenophobia, but by concern for the convenience of the parties and the court.

■ We take the factual allegations in the affidavits and documentary evidence as true, giving credit to the plaintiff's submissions when there is conflict and resolving ambiguities in favor of the plaintiff. But we accept the uncontradicted factual statements in Ralston's affidavits. The plaintiff suggests that additional discovery might produce further evidence in support of its contention that Missouri is a convenient forum. A party who wants to introduce motion testimony in court or by deposition must apply to the trial court. The record shows ample notice of the hearing on the motion. The suggestion in the briefs comes too late.

Ralston is a Missouri corporation with its principal office in St. Louis. It is the sole beneficial owner of PDGSA and so has the ability to control it. In 1986 it entered into a ten-year technical assistance agreement with PDGSA in which it undertook to develop and supply formulas for animal food products and to provide further assistance on request by PDGSA. Ralston does not produce or sell shrimp feed, and does not supply the ingredients for PDGSA's product.

The plaintiff chose Guatemala as its place of incorporation. It produces shrimp commercially in that country, and purchases shrimp feed produced by PDGSA in Guatemala. When Acapolon contemplated the purchase of feed from PDGSA in 1986, its general manager met in Guatemala with two Ralston employees, one of whom was Noel Robyn, then a St. Louis resident who was vice president of Ralston's international division and one of the three directors of PDGSA. Robyn represented that he was in charge of PDGSA and would work with the plaintiff in supplying feed for its shrimp farm. After the visit, Robyn sent a letter to Acapolon offering to "provide assistance" as Acapolon proceeded with its shrimp raising operations.

The plaintiff began using feed from PDGSA in March of 1986 and continued to use it through June of 1988. When deficiencies appeared in its shrimp crop it consulted Robyn, who made a trip to Guatemala in an apparently unsuccessful attempt to resolve the plaintiff's concerns. Its principal officers, and the expert witnesses it expects to call, speak English as their primary language.

■ The plaintiff asserts that its primary claim for recovery is based on "products liability" for the defective design of the shrimp feed. It says that the shrimp feed was "designed" in St. Louis and relies on Noel Robyn's statement that "all decisions as to the content of the feed were made by Ralston Purina Company in St. Louis." This circumstance does not necessarily preclude application of the doctrine of forum non conveniens. *See de Melo v. Lederle Laboratories,* 801 F.2d 1058 (8th Cir.1986). There is no explicit demonstration that any witness who participated in the design or testing is now present in St. Louis. The plaintiff alleges, indeed, that Ralston's "shrimp expert" is a Texas resident.

---

**1.** See, e.g., *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *De Melo v. Lederle Laboratories,* 801 F.2d 1058, 1062 n. 4 (8th Cir.1986). *In re Union Carbide*

*Gas Plant Disaster,* 809 F.2d 195, 202 (2d Cir. 1987). *See generally,* Peter G. McAllen, *Deference to the Plaintiff in Forum Non Conveniens,* 13 S.Ill.U.L.J. 191 (1980).

The plaintiff, in all counts of its petition, seeks to "pierce the corporate veil" so as to make Ralston liable for the claimed damages. It asserts that it assumed at all times that Ralston and PDGSA were a single entity and that it was doing business directly with Ralston. This assertion, however, is inconsistent with the documents evidencing its purchases from PDGSA, which belie the contractual involvement of Ralston. A corporation, just as an individual, is entitled to the benefits of limited liability if it chooses to invest in the securities of other corporations and may exercise the control which inheres in stock ownership.[2] It does not lose the benefits of limited liability by taking an active interest in the affairs of its subsidiary, by using its voting power to elect directors, or by entering into contracts with the subsidiary, so long as the corporate formalities are observed and the rules followed. The respect to be shown to the entity of a Guatemala corporation, moreover, is a pristine question of Guatemala law.

*Riederer* listed six factors for consideration in determining whether the doctrine of forum non conveniens should be applied:

... place of accrual of the cause of action, location of witnesses, the residence of the parties, any nexus with the place of suit, the public factor of the convenience to and burden upon the court, and the availability to plaintiff of another court with jurisdiction of the cause of action which affords him a forum for his remedy.

*Riederer, 454 S.W.2d at 39.*[3]

Analysis of these factors supports the trial court's decision. The claim accrued in Guatemala and the damage occurred there. The witnesses to the production of the shrimp feed, and to the shrimp raising operation, are present in Guatemala. The plaintiff does not demonstrate that any material witness, expert or otherwise, now lives in Missouri. Robyn, with whom the plaintiff's officers dealt, is no longer employed by Ralston and lives in Florida. Ralston's residence and principal place of business is in Missouri, but the factor of residence of the defendant is not inevitably controlling. This is especially so when there are other, nonresident defendants. *See Rozansky Feed Co., Inc. v. Monsanto Co.,* 579 S.W.2d 810 (Mo.App.1979).

We recognize that *Besse v. Missouri Pacific Railroad Co.,* 721 S.W.2d 740 (Mo. banc 1986) *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), allowed a FELA judgment to stand when location of the railroad's principal office was the only substantial local contact. *Besse* is distinguishable for several reasons. FELA law is established by Congress and must be applied uniformly by all states, *see Besse,* 721 S.W.2d at 741. *Besse,* therefore, presented no problem of choice of law or of the application of foreign law. Although Missouri courts are capable of hearing cases involving foreign law and requiring the use of interpreters, if necessary, those circumstances certainly make the trial more difficult.

*Besse* recognized that substantial inconvenience inevitably accompanies suits between residents of different jurisdictions, *see Besse,* 721 S.W.2d at 742. The great distance between Missouri and the site of the injury in Guatemala exacerbates the inconvenience. A forum is available in Guatemala, and Ralston has consented to subject itself to suit there, as is appropriate for a party seeking the benefit of the doctrine of forum non conveniens.[4]

Acapolon complains that Guatemala is not an available alternative forum

---

2. *See Central Cooling & Supply Co. v. Director of Revenue,* 648 S.W.2d 546, 548 (Mo. banc 1982); *Blum v. Airport Terminal Services, Inc.,* 762 S.W.2d 67, 72 (Mo.App.1988).

3. In *Mizokami Brothers of Arizona v. Mobay Chemical Corporation,* 660 F.2d 712, 719 (8th Cir.1981), Judge J. Smith Henley suggests that Missouri criteria for forum non conveniens are the same as the federal.

4. *See de Melo v. Lederle Laboratories,* 801 F.2d 1058, 1059 (8th Cir.1986); *Mizokami Brothers of Arizona v. Mobay Chemical Corp.,* 660 F.2d 712, 719 (8th Cir.1981); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India,* 809 F.2d 195, 197–99 (2d Cir.1987) *cert. denied sub nom Executive Committee Members v. Union of India,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987).

**194**

because that nation's courts cannot exercise jurisdiction over Ralston and would not provide a remedy for Acapolon's product liability claims. The plaintiff provides the affidavit of one of its principal officers, who asserts that he was advised by a Guatemala lawyer that the law of that country did not recognize "products liability" or "strict liability" actions. In so arguing, the plaintiff fails to give attention to the basic doctrines of conflict of laws. Even if the case were to proceed in Missouri, there is no assurance that Missouri law would be applied. There would, rather, be an analysis of the most significant circumstances touching the litigation to determine which law should govern. *Kennedy v. Dixon*, 439 S.W.2d 173, 181–86 (Mo. banc 1969). The doctrines of conflict of laws are international in application.[5] An alternate name for this area of jurisprudence, indeed, is "private international law."

Under the basic doctrines of conflict of laws, the law of Guatemala would be consulted both as to the tort and contract elements of the plaintiff's claim.[6] When a foreign corporation suffers a loss in its own nation through the use of a product manufactured in that nation, the foreign forum will generally have the greatest interest in resolving the suit. Its residents look to it for protection and for regulation of its industrial community. Missouri's interest in assuring that its corporations comply with adequate design standards when designing products for manufacture and use abroad is less substantial than the foreign nation's interest in protecting its citizens from injury and setting standards for the manufacture and distribution of products within its borders.

Thus the mere desire to make use of Missouri products liability law, even if that law would be applied, is not a sufficient reason to permit the action to proceed in an inconvenient forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 246, 102 S.Ct.

252, 260, 70 L.Ed.2d 419 (1981). The plaintiff does not assert that it will be deprived of the opportunity to pursue its other theories of recovery. Dismissal for forum non conveniens is not rendered inappropriate simply because the remedies available elsewhere are not identical to those available under the domestic law of the chosen forum. The doctrine may be applied so long as there is an alternate forum in which an effective remedy is available. *Piper* held that the absence of a strict liability cause of action in Scotland did not render that forum inadequate. *Piper*, 454 U.S. at 254–55, 102 S.Ct. at 265–66. We reach the same conclusion here with regard to Guatemala. *See also de Melo v. Lederle Laboratories*, 801 F.2d 1058 (8th Cir.1986).

We might view Acapolon's argument more favorably if Guatemala's courts were so underdeveloped or manifestly unfair as to offend due process. *See Piper*, 454 U.S. at 254, 102 S.Ct. at 265; *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 78 F.R.D. 445, 455–58 (D.Delaware 1978). There is no such indication. Guatemala is a member of the United Nations and of the Organization of American States. It maintains diplomatic and commercial relations with the United States. Under these circumstances the plaintiff may be expected to demonstrate that the Guatemalan judicial system is not adequate to protect commercial expectations in contractual relationships, or that its courts could not be expected to make an appropriate choice of law in cases coming before them. The plaintiff makes no showing such as was presented in *Phoenix*.

The cases from other jurisdictions previously discussed demonstrate consensus that a case with substantial international factors is best litigated in the venue in which the preponderance of the operative facts took place. We find ourselves in general agreement with the opinion in *Piper*, which approved the dismissal of an action arising from a plane crash in Scotland

---

5. *See generally* Eugene F. Scoles & Peter Hay, *Conflict of Laws* (1984); Restatement (Third) of Foreign Relations Law of the United States (1986); Symposium, *Extraterritoriality of Economic Legislation,* 50 Law & Contemp.Probs. 1 (1987).

6. *See Picketts v. International Playtex, Inc.,* 215 Conn. 490, 576 A.2d 518, 526 (1990); *de Melo v. Lederle Laboratories,* 801 F.2d 1058, 1064 (8th Cir.1986).

which caused the deaths of Scottish nationals. The plane was designed and manufactured in the United States, but operated by a Scottish corporation. *de Melo v. Lederle Laboratories,* 801 F.2d 1058 (8th Cir.1986), a case quite similar to this one, involved an injury caused by a medicinal product manufactured and distributed in Brazil by a Brazilian subsidiary of an American corporation. The American parent designed the product and licensed the subsidiary to manufacture and market it, but the court held that Brazil was the more convenient forum. *See also McCracken v. Eli Lilly and Company,* 494 N.E.2d 1289 (Ind.App.1986) (affirming forum non conveniens dismissal of an action on account of a drug manufactured and distributed abroad); *Union Carbide Corporation Gas Plant Disaster at Bhopal, India,* 809 F.2d 195 (2d Cir.1987), *cert. denied sub nom Executive Committee Members v. Union of India,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987) (affirming dismissal of a suit arising from an industrial accident in India); *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608 (6th Cir.1984). *Picketts v. International Playtex, Inc.,* 215 Conn. 490, 576 A.2d 518 (1990), which allowed suit against an American corporation on account of a product manufactured by its Canadian subsidiary and used in Canada, is distinguishable because the distance is not so great and the language is common.

Our result also finds support in *Mizokami Brothers of Arizona v. Mobay Chemical Corporation,* 660 F.2d 712 (8th Cir. 1981), which involved a pesticide that could not be distributed in the United States. An American subsidiary manufactured the principal ingredient of the pesticide and sold it to its German parent, which consigned the product to its Mexican subsidiary for sale to Mexican growers. The growers' products were then barred from the United States because of the presence of the pesticide. The court held that the trial court properly declined to proceed because the facts showed that Mexico would be a more convenient forum. Thus, even when an American company manufactures an offending element in this country, the facts may not justify proceedings in an American forum.

The plaintiff finally suggests that the courts of Guatemala may decline to proceed with the case, pointing out that there will be inconveniences wherever the issues are tried and that Guatemala does not have a long-arm statute that would allow it to exercise jurisdiction over Ralston. If that nation's courts refuse to proceed, even though Ralston enters its appearance, the action could be refiled in Missouri. A dismissal for forum non conveniens is necessarily a dismissal without prejudice.

### 2. Motion to Quash Service

PDGSA did not file a motion to dismiss on the ground of forum non conveniens. It rather moved to dismiss or to quash service, alleging that it is not subject to suit in Missouri and was not properly served with process. We conclude that the trial court properly quashed service.

Although Ralston was served through its statutory registered agent, the plaintiff undertook to serve PDGSA by delivering the summons and a copy of the petition to Dennis Fales, who is identified only as an "employee" of Ralston at its St. Louis headquarters. The sheriff's return states that service on PDGSA was made:

> by delivering a copy of the writ and petition furnished by the clerk to Dennis Fales, who accepted service thereof for and on behalf of Purina de Guatemala. 835 S. 8th.

The street address given is that of Ralston's headquarters in St. Louis.

Under *Rule 54.13(a)(3)* service may be made:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment

or required by law to receive service of process.

 The return does not even demonstrate effective service on Ralston. There is no showing that Fales was an officer or general or managing agent either of Ralston or of PDGSA, that he was in charge of Ralston's office, or that he was authorized to accept service for either corporation. Barring a showing of office or authority, his undertaking to accept service, as stated in the return, does not make the service effective. Agency cannot be established by the unsupported declarations of the agent.[7] The plaintiff has failed to demonstrate that PDGSA is properly in court.

The plaintiff cites *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988), to demonstrate that service on a parent corporation may meet due process requirements for jurisdiction over a subsidiary. Satisfying minimum standards of due process, however, does not obviate the necessity of serving process in the manner prescribed in our statutes and rules. In *Volkswagenwerk*, the state law authorized service on a foreign corporation by serving its domestic subsidiary. The decision offers no refuge to Acapolon because it did not effect service in compliance with state law.

The judgment of the circuit court is affirmed as to both defendants.

All concur.

---

7. *Martinez v. Arrow Truck Sales, Inc.*, 888 F.2d 64, 68 (8th Cir.1989); *Rosser v. Standard Mill Co.*, 312 S.W.2d 106, 110 (Mo.1958); *Eyberg v. Shah*, 773 S.W.2d 887, 890–91 (Mo.App.1989).