**Natacha CHANDLER,**
et al., Appellants,

v.

**MULTIDATA SYSTEMS INTER-NATIONAL CORP., INC., et**
al., Respondents.

No. ED 84192.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 2005.

538

Edward D. Robertson, Jr., Anthony De-Witt, Jefferson City, MO, Joe Fisher, Mark Sparks, Beaumont, TX, Benton Musslewhite, Houston, TX, for appellant.

Jeffrey K. Suess, Heather J. Hays, St. Louis, MO, Clayton E. Dickey, Matthew S. Jensen, Kansas City, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Natacha Chandler, along with a number of persons exposed to excess radiation and survivors of persons who died as a result of excess radiation, almost all of whom are Panamanian residents and citizens (collectively "Plaintiffs"),[1] appeal the judgment of the trial court dismissing their claims against Multidata Systems International Corp., Inc. ("Multidata"), and Theratronics International Limited, MDS (Canada), Inc., MDS Nordion, and MDS, Inc. (collectively "Canadian Defendants") for forum non conveniens.[2] We affirm.

Between August and December 2000, Plaintiffs (or their decedents) received radiation therapy from the Instituto Oncológico Nacional ("ION") (translated as the "National Oncology Institute"), which is located in Panama City, Panama. During this time, they were over-exposed to radiation, resulting in injuries and several deaths. Once the effects of the over-radiation surfaced, the government of Panama requested an investigation into the over-radiation by the International Atomic Energy Association ("IAEA"), which included a panel of several international experts and a number of Panamanian supporting experts. The IAEA published a report explaining its understanding of the events leading to the over-radiation ("IAEA Report").

In October 2001, the injured patients and the survivors of deceased patients, totaling 112 persons, brought an action in St. Louis County, Missouri, against Multidata, a Delaware corporation whose principal place of business is in St. Louis County, and Canadian Defendants, which are all Canadian corporations,[3] for lost chance of recovery or survival, wrongful death, and negligence due to Multidata's and the Canadian Defendants' alleged defective radiation therapy products. In particular, Plaintiffs alleged that Multidata negligently manufactured and sold a computer-operated treatment system known as the Treatment Planning System ("TPS") and that the Canadian Defendants negligently manufactured and sold a Cobalt 60 Theratron 780C Teletherapy Unit ("Theratron Unit"), both of which were used by the radiation oncology team to administer radiation therapy at the ION.

According to the IAEA report, the TPS is designed to calculate dosage times where the radiation oncology team uses up

---

1. The record shows that 2 of the 112 plaintiffs are United States citizens living in Panama and 2 are United States residents. According to the parties' briefs, however, one of the United States residents passed away in 2004.

2. Defendant Canada Development Investment Corporation was dismissed by Plaintiffs prior to this appeal.

3. We note that the record indicates some of the Canadian Defendants are not actually corporations but are instead divisions of corporations or predecessors of corporations. However, since their status as corporations has no bearing on our decision, we will refer to them as corporations for the sake of simplicity.

to four shielding blocks to protect a patient's healthy tissue and organs while administering radiation to the cancerous tissue. At some point, one of the radiation oncologists decided to add a fifth block during treatment. The oncologist asked the physicists to enter data regarding the fifth block into the TPS to calculate a new dosage in light of the added block. However, because the TPS is not equipped to calculate a dosage where five blocks are used, the physicists re-configured the entry of data to make it appear to the TPS that the five blocks were actually one single block. As a result, the TPS miscalculated the amount of radiation a patient would actually receive during a therapy session and prescribed a greater number of therapy sessions than the patient should have been given. Ultimately, one of the radiation oncologists and all three physicists on the radiation oncology team at the ION lost their licenses to practice for life. In addition, two of the three physicists were criminally convicted in Panama of negligent homicide due to their roles in the over-radiation.

In response to Plaintiffs' petition, Multidata and the Canadian Defendants moved to dismiss the action under the doctrine of forum non conveniens on the basis that Panama is a more convenient forum. After extensive discovery, including depositions of several experts, the court held an evidentiary hearing to determine whether the action should be dismissed. In support of their motions, Multidata and the Canadian Defendants first presented the testimony of Rajendra G. Kurup, PhD. ("Dr.Kurup"), the Director of Medical Physics and an Associate Officer at the University of Kansas. Dr. Kurup testified regarding the standard of care that applies to radiation oncology. Relevant to Plaintiffs' allegations, he stated that the standard of care for radiation oncology includes verification of a patient's treatment plan. He testified that generally physicists should conduct an independent second check to make sure a patient gets the correct treatment. Consequently, Dr. Kurup stated that where a physicist or an oncologist deviates from a treatment plan as described in the IAEA report, an independent second check of the dosage calculation is even more important. According to Dr. Kurup, had the ION physicists performed a manual calculation to check the treatment times, which would take them roughly ten minutes to complete, they would have caught the error.

Dr. Kurup also identified the presence of other indicators that should have alerted the radiation oncology team that the dosage time was erroneous, including the configuration of isotope curves (curves used to graphically illustrate the amount of radiation a patient is receiving) that resulted after entry of the erroneous data and the actual extension of time attributed to each separate dose of radiation from the typical amount of 35–50 seconds to 60–90 seconds after re-calculation with the fifth block. Finally, Dr. Kurup noted that a basic principle in using computers to make calculations is that ·if incorrect information is entered, the computer cannot generate a correct output.

On the issue of Panamanian law, Multidata and the Canadian Defendants offered the testimony of Dr. Narciso Arellano Moreno ("Dr.Arellano"). Dr. Arellano testified that he is a litigation attorney in Panama City, Panama, who has been practicing law since 1976. Dr. Arellano served as dean of the law school he attended in Panama for twelve years and is currently a substitute judge for the Court of Appeals in the district of Panama. During his testimony, Dr. Arellano cited and explained the sections of Panama's Judicial Code and Civil Code that permit Plaintiffs to bring a cause of action against Multida-

ta and the Canadian Defendants for "extra-contractual" damage, or damage that a person suffers due to negligence. Should Plaintiffs prevail, Dr. Arellano stated that under Panamanian law they would be entitled to recover both "material" damages, such as medical expenses and lost wages, and "moral" damages, such as pain and suffering.

Dr. Arellano further testified regarding the due process protections and discovery tools available to litigants in Panama, such as a party's ability to add third parties and to obtain expert testimony and documentary evidence. As to the competency and fairness of judges, Dr. Arellano testified that he believed all the judges in Panama were competent and had to meet various qualifications outlined in the statutes. He also testified that any corruption present in the system could be remedied using Panama's complaint process. Panama recently enacted "Law 23" to improve the efficiency of the court system, and, according to Dr. Arellano, Law 23 has generated positive results.

With respect to jurisdiction over foreign defendants, Dr. Arellano explained, based on Panama's Judicial Code and his experience trying cases against foreign corporations, that Panama may take jurisdiction over the defendants based on the location of Plaintiffs' injuries in Panama City even though Multidata and the Canadian Defendants are foreign corporations not registered in Panama. With respect to the legal principle of *lites pendencia*, which precludes a plaintiff from filing a lawsuit against a person while another suit is pending against the same person based on the same incident, Dr. Arellano testified that this principle only applies where the suit is filed within the nation of Panama and does not apply to suits pending in foreign countries.

Finally, Dr. Arellano explained the application of the Bustamante Code, a treaty governing civil litigation among Central and South American countries. Dr. Arellano stated that the Bustamante Code, which limits a court's jurisdiction over a cause of action to the location of the defendant's domicile or a venue to which all parties have consented, can only be enforced with respect to countries that ratify and adhere to it, and that to the extent the Bustamante Code conflicts with Panamanian law, Panamanian law will prevail. According to Dr. Arellano, the United States has not ratified the Bustamante Code.

When Dr. Arellano completed his testimony, Multidata and the Canadian Defendants then presented the videotaped deposition testimony of Dr. Jorge Jose Fabrega Ponce ("Dr.Fabrega"), Plaintiffs' Panamanian law expert. In addition to receiving his law degree in Panama, Dr. Fabrega received a Bachelor of Arts from the University of Southern California, a Master's Degree in political science from the University of Pennsylvania, and has studied comparative law at the University of Strasbourg in France. Dr. Fabrega has practiced law since 1953 and has served as an active justice in Panama's Civil Court of Appeals and Civil Chamber of the Supreme Court, administrative litigation. In addition, Dr. Fabrega has assisted in drafting the Judicial Code of Panama, which regulates civil procedure, and has written books on topics such as procedural law, evidence, and civil law.

Although at certain points during Dr. Fabrega's deposition he stated that Panama was not an available forum because Plaintiffs already chose to sue in the United States, he agreed that Panamanian law provided a cause of action against manufacturers for negligence under its Civil Code. Dr. Fabrega also stated that plaintiffs can sue either at the location of the

defendant's domicile or the location of the injury, depending on the plaintiff's choice, and that defendants can consent to jurisdiction in Panama.

As to the general characteristics of Panamanian law, Dr. Fabrega explained that Panama follows the Roman system, which means that Panama law is codified. Therefore, Panama courts do not consider written opinions to be precedent, although they can be considered persuasive authority. Dr. Fabrega also testified that trial judges, rather than juries, are fact-finders in civil matters. When asked questions regarding Panama's interest in providing a forum for the case, Dr. Fabrega acknowledged that Panama has a legitimate interest in protecting its citizens from injury and setting standards for the manufacture and distribution of products within its borders.

To the extent Dr. Fabrega testified unfavorably with regard to Plaintiffs' ability to bring a cause of action against foreign corporations and as to corruption or other problems with Panama's judicial system, Multidata and the Canadian Defendants produced affidavits filed with respect to two prior United States cases in which Dr. Fabrega testified that Panama is an available and an adequate forum for persons wishing to sue foreign corporations for negligence, including for negligence due to defective manufacturing of a product.

Although Dr. Fabrega believed some of the Panamanian judges were not as experienced as others due to a shifting of judges from the criminal to civil courts, he testified that he disagreed with a United States Department of State report which stated that Panama's judiciary is susceptible to corruption and outside influence. He also stated that he believed the members of the higher courts were competent and honest although some may be subject to political influence.

Dr. Fabrega duplicated some of Dr. Arellano's testimony at the hearing regarding a plaintiff's ability to recover material and moral damages and the lack of a cap on such damages, but he further stated that punitive damages may not be available in Panama. He testified that parties can compel non-party witnesses to testify through compulsory service and that contingent fee arrangements are permissible. As to admissible evidence, Dr. Fabrega stated that documents from the United States would be admissible so long as the defendants' representatives testified with respect to their authenticity.

To support their opposition to Multidata's and the Canadian Defendants' motions to dismiss, Plaintiffs presented the testimony of Dr. Julio Elias Berrios Herrara ("Dr.Berrios"). Dr. Berrios is a private attorney and also a professor of international law at the University of Panama. He testified that in his opinion, once Plaintiffs sued Multidata and the Canadian Defendants in the United States, they could not return to Panama and file the cause of action there. Although Dr. Berrios acknowledged that the Judicial Code allows a plaintiff to sue a defendant where the injury occurred, Dr. Berrios explained that once you choose one forum, you cannot choose the other. Dr. Berrios did not cite to any Judicial Code or Civil Code articles, but he did argue that the Bustamante Code supported his conclusion.

When asked whether a plaintiff can sue an unregistered foreign corporation in Panama, Dr. Berrios was adamant in denying this possibility unless the foreign corporation did business in Panama. Dr. Berrios did not explain where in the Judicial Code a prohibition on suing a foreign corporation unless the corporation did business in Panama existed. He also testified that he disagreed with Dr. Fabrega's testimony that a defendant can consent to

jurisdiction in this case. Again, Dr. Berrios did not cite to any Panamanian authority to support his statements. Dr. Berrios testified that a treaty called the "TALM" treaty gave parties in a United States case authority to compel testimony of non-party witnesses in Panama. However, Dr. Berrios could not verify that it applied in the present case since the TALM treaty states that it was approved with respect to mutual legal assistance in criminal cases, not civil cases.

With regard to the adequacy of Panama's judicial system, Dr. Berrios testified that he believed the Panama judicial system was corrupt and about to collapse based on the United States Department of State report, newspaper articles that stated that some judges and magistrates were sanctioned because of corruption and manipulation, and a newspaper article in which the president of the Supreme Court of Panama criticized the legislature for refusing to commit a greater sum of money to the judiciary's budget. With regard to judges' competency, Dr. Berrios explained that some of the judges would not be able to handle a complex case and that he had bad experiences with female judges who refused to take cases because of their complexity.

At some point during the pendency of this case, one of the Plaintiffs filed an action in Panama against Multidata and some of the Canadian Defendants based on the same allegations. Plaintiffs obtained a ruling from a Panama circuit judge dismissing the case for lack of jurisdiction. At oral arguments subsequent to the trial court's evidentiary hearing but prior to its judgment, Multidata and the Canadian Defendants strenuously objected to consideration of the Panama court's ruling because the case was filed in the wrong district, neither Multidata nor the Canadian Defendants were served, and the court order mentioned the names of defendants that were not listed in the complaint but were part of the case here in Missouri, which suggested that the Panama judge did not write the opinion. Multidata and the Canadian Defendants further explained that they were in the process of appealing the Panama judge's order.

After considering the testimony of the parties' experts, reviewing the legal file, and hearing oral arguments, the trial judge sustained Multidata's and the Canadian Defendants' motions to dismiss Plaintiffs' claims for forum non conveniens. This appeal follows.

■■■ The doctrine of forum non conveniens provides that although a trial court may have proper jurisdiction and venue under the appropriate statute, a trial judge has discretion to not exercise jurisdiction if the forum is seriously inconvenient for the trial of the action involved and if a more appropriate forum is available to the plaintiff. *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298, 302 (Mo. banc 1992). In applying the doctrine, trial courts are to consider the following six factors as a guide to determining whether dismissal is warranted: (1) the place of accrual of the cause of action; (2) the location of witnesses; (3) the residence of the parties; (4) any nexus with the place of suit; (5) the public factor of the convenience to and burden upon the court; and (6) the availability to the plaintiff of another court with jurisdiction over the cause of action affording a forum for the plaintiff's remedy. *State ex rel. Chicago, Rock Island & Pacific R.R. Co. v. Riederer*, 454 S.W.2d 36, 39 (Mo. banc 1970). However, the *Riederer* factors are not an exclusive listing of the facts to be considered in deciding whether to apply the doctrine. *Anglim*, 832 S.W.2d at 302–03. In addition, neither *Riederer* nor its progeny purport to set the respec-

tive weight a trial court must accord to any particular factor. *Id.*

■ When deciding whether to dismiss, a trial court necessarily must determine facts and, in doing so, must weigh evidence and assess the credibility of witnesses. *Id.* at 303. Witness intangibles and knowledge common in the community where the case is tried impact on the weight and credibility of the evidence. *Id.* Thus, because the application of the doctrine of forum non conveniens is fact-intensive and the weight to be accorded to any factor is dependent on the circumstances, trial court discretion is essential. *Id.* In reviewing whether the trial court's ruling amounts to an abuse of discretion, we consider only those facts that were before the court when it ruled on the motion, and the evidence is viewed in the light most favorable to the trial court's decision. *Id.* Discretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion. *Id.*

■ Judicial discretion is abused where the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* Thus, if reasonable persons can differ about the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *Id.*

Plaintiffs raise four points on appeal. In Plaintiffs' first point, they argue that the trial court erred in concluding that Panama is an adequate and available forum because the evidence of whether the courts of Panama would assume jurisdiction over the case was disputed and thus should have been resolved in favor of Plaintiffs.

■ As apparent from Plaintiffs' assertion regarding disputed facts, we initially note that Plaintiffs misunderstand the standard of review applied to a trial court's ruling on a motion to dismiss for forum non conveniens. Plaintiffs cite *Acapolon Corp. v. Ralston Purina Co.,* 827 S.W.2d 189, 192 (Mo. banc 1992), as support for its contention that disputed facts must be resolved in their favor. Plaintiffs are correct in noting that in *Acapolon,* the court stated that in reviewing the defendants' motion for dismissal on the basis of forum non conveniens it would take factual allegations in affidavits and documentary evidence as true, giving credit to the plaintiff's submissions when there is conflict and resolving ambiguities in favor of the plaintiff. *Id.* However, in *Acapolon,* the court did not have deposition or hearing testimony before it. In particular, the court stated:

> The plaintiff suggests that additional discovery might produce further evidence in support of its contention that Missouri is a convenient forum. A party who wants to introduce motion testimony in court or by deposition must apply to the trial court. The record shows ample notice of the hearing on the motion. The suggestion in the briefs comes too late.

*Id.* Therefore, unlike the circumstances in *Acapolon,* the trial court in this case was able to observe witnesses through live and videotaped testimony. Thus, as stated in *Anglim,* we will defer to the trial court's determinations of witness credibility and view the facts in the light most favorable to the trial court's ruling. *Anglim,* 832 S.W.2d at 303.

As to Plaintiffs' argument that Panama is not an available forum, Plaintiffs merely recite favorable testimony from Dr. Berrios and argue that "the trial court had a legal obligation to conclude that the Panamanian court system was not available to these Plaintiffs." As stated above, the trial court did not have a legal obligation to

conclude that the Panamanian court system was unavailable. Moreover, Multidata and the Canadian Defendants presented ample evidence in the form of actual sections of Panama's Judicial and Civil Codes and expert testimony from Dr. Arellano and Dr. Fabrega, along with Dr. Fabrega's affidavits, indicating that Panama can assume jurisdiction over the parties, provide a cause of action against Multidata and the Canadian Defendants, provide due process and an effective discovery system to prepare for trial, and provide adequate remedies.[4]

Multidata and the Canadian Defendants also presented evidence to dispute Plaintiffs' contention that the Bustamante Code precludes Panama from exercising jurisdiction based on Article 2, which states that the Bustamante Code will not be applicable except between contracting republics. The record reflects that neither the United States nor Canada has ratified the Bustamante Code. Moreover, to the extent Panama would allow jurisdiction in Panama while the Bustamante Code would preclude it, Article 318 of the Bustamante Code states that jurisdiction shall be at the domicile of the defendant unless otherwise provided by local law. Panama's Judicial Code Article 259, Second Case, conflicts with this provision since it allows a plaintiff to sue where the injury occurred.

We agree with Multidata and the Canadian Defendants that Plaintiffs' reliance on *Canales Martinez v. Dow Chemical Co.,* 219 F.Supp.2d 719 (E.D.La.2002), to support application of the Bustamante Code is misplaced. In discussing this case, we emphasize that not only are we not bound by its reasoning, we also note that the court

in *Canales* did not mention Article 2 of the Bustamante Code, which limits its applicability to two contracting republics. In *Canales*, plaintiffs from three countries, including Costa Rica, filed claims against United States defendants based on the defendants' manufacturing and production of a chemical used on farms in banana-growing regions which rendered the plaintiffs sterile. *Id.* at 721–22. The district court denied the defendants' motion to dismiss for forum non conveniens. *Id.* at 721. In doing so, the court reviewed Costa Rica's code of civil procedure, reported cases on the subject of jurisdiction, and provisions of the Bustamante Code. *Id.* at 726–27. Although the court relied in part on the language in the Bustamante Code requiring both parties to submit to a court's jurisdiction, its reasons for denying the defendants' motion were that Costa Rica's code of civil procedure clearly barred the plaintiffs from filing a claim against the defendants in Costa Rica once they filed their suit in the United States. *Id.* at 727–28. Thus, the court noted that the plaintiffs had no ability to submit to Costa Rica's jurisdiction in any event. *Id.* at 728.

Here, there is no indication that the Bustamante Code will apply based on Article 2. Further, unlike the plaintiffs in *Canales*, Plaintiffs fail to demonstrate which sections of Panama's Judicial or Civil Codes prohibit Plaintiffs from re-filing this cause of action in Panama. Rather, contrary to Costa Rica's Code, the Panama Judicial Code in Article 232 states that national jurisdiction is not precluded by the pendency of proceedings before a for-

---

**4.** For instance, Judicial Code Article 259, Second Case, provides that in civil suits seeking reparation of harm and damages based on non-contractual liability, the judge of the place where the harm occurred is competent

(or has the ability to assume jurisdiction). In addition, Articles 658 and 659 explain the procedure a plaintiff must follow to sue unregistered foreign corporations.

eign judge in the same or an ancillary case.[5]

■ In their reply brief, Plaintiffs add several documents to their appendix to support their argument that Panama will not exercise jurisdiction over Multidata or the Canadian Defendants because Plaintiffs already sued them in the United States. Included in this appendix are Organization of the American States Reports from 1999 and 2000 presented by Dr. Gerardo Trejos Salas and the text of the April 15, 2004 appellate decision from the First Superior Court in and for the First Judicial District of Panama addressing the case filed by one of the Plaintiffs against Multidata and the Canadian Defendants in Panama during the pendency of this case. The American States Reports, which contain Dr. Salas's arguments regarding whether Central American countries should accept jurisdiction under certain circumstances, were not before the trial court even though clearly available at that time given their dates of publication. The appellate decision from the First Superior Court confirms the fact that the case was filed in the wrong venue in Panama, which renders the balance of the opinion pure dicta.

■ In any event, as stated above, in reviewing the trial court's decision we consider only those facts that were before the court when it ruled on the motion. *Anglim*, 832 S.W.2d at 303. The presence of these documents submitted for the first time on appeal are not properly part of the record and cannot be considered by us as

supplying the necessary elements of proof. *American Express Travel Related Services v. Mace*, 26 S.W.3d 613, 615 (Mo.App. 2000). Moreover, assuming that Panama does refuse to proceed, this action can be re-filed in Missouri as a dismissal for forum non conveniens is necessarily a dismissal without prejudice. *Acapolon*, 827 S.W.2d at 195.

Based on the foregoing, the trial court did not abuse its discretion in finding that Panama is an available forum. Plaintiffs' first point is therefore denied.

■ Plaintiffs argue in their second point that the trial court erred in determining that Panama is an adequate forum in light of their evidence that the Panama judicial system is subject to corruption and political manipulation. As in their first point, Plaintiffs argue that evidence of whether the Panamanian judicial system is subject to corruption is disputed and therefore should be resolved in favor of Plaintiffs. We reemphasize that the trial judge was not required to resolve this issue in Plaintiffs' favor and was entitled to make credibility determinations based on the testimony of the parties' expert witnesses.

Plaintiffs principally rely on the United States Department of State Report, which states that the Panama judiciary "was subject to corruption and political manipulation." However, while the trial court was entitled to take this report into consideration, *see Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir.2000), the trial

---

5. We note that Dr. Berrios mentions a Panama court decision in which a Panamanian court determined whether Panama had jurisdiction over a case that was previously dismissed from a court in the United States on the basis of forum non conveniens. Although the judge determined that the Panamanian court had no jurisdiction, the record contains an affidavit from Dr. Fabrega explaining that

the reason the Panamanian court had no jurisdiction was because the plaintiffs failed to file the action in the province of Chiriqui, where the injury occurred, and instead filed in the province of Panama. Viewing this evidence in the light most favorable to the trial court's decision, we defer to the trial judge's finding that this case is not dispositive of the issue of Panama's availability.

court also had discretion to review the other evidence presented. Moreover, the trial court was not required to rely on the conclusory statements of Dr. Berrios. *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 678 (D.D.C.1996) (stating that inadequacy cannot be established by general allegations of corruption). The trial court did not abuse its discretion in relying instead on Dr. Arellano and Dr. Fabrega, two practicing attorneys in Panama with connections to the judiciary, who both testified that Panama's judicial system is not corrupt. Although Dr. Fabrega stated that some of the judges are not experienced and may be subject to political influence, the trial court could have given less credit to this testimony in light of his contradictory testimony in affidavits filed in prior United States cases where he stated Panama is an adequate forum as well as Panama's codified requirements for qualification and process for sanctioning judges who are found to be corrupt. Plaintiffs' second point is denied.

 In their third point, Plaintiffs argue that the trial court erred in ordering dismissal under forum non conveniens because not all of the defendants in this case have agreed to be bound by a judgment of the courts of Panama, rendering Panama an inadequate forum. In support of this argument, Plaintiffs cite cases wherein the court relied in part on the defendants' stipulations or refusals to stipulate that they would be amenable to judgment in the foreign forum in deciding whether to grant the defendants' motions to dismiss for forum non conveniens. *See De Melo v. Lederle Laboratories*, 801 F.2d 1058, 1059 (8th Cir.1986); *Mizokami Bros. of Ari-*

*zona, Inc. v. Mobay Chem. Corp.*, 660 F.2d 712, 719 (8th Cir.1981). Nevertheless, *De Melo* did not require defendants to stipulate that they will honor a foreign judgment in order for the court to grant dismissal, although it did cite *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which states that in weighing private interest factors, courts may consider that there may be questions as to the enforceability of a judgment if one is obtained. *De Melo*, 801 F.2d at 1062. In *Mizokami Bros.*, the Eighth Circuit vacated the trial court's dismissal of the action for forum non conveniens because the dismissal was not conditioned on whether the alternative forum was actually available considering that the parties did not adequately address the issue. 660 F.2d at 719. While the court listed the defendant's consent to satisfy a judgment as a proper condition to be included in the order of dismissal on remand, it did not find that the failure of a trial court to obtain such consent amounts to an abuse of discretion. *Id.* In the absence of such a rule, we cannot say the trial court abused its discretion in granting Multidata's and the Canadian Defendants' motions without requiring stipulations.[6] Plaintiffs' third point is denied.

 In Plaintiffs' final point, they argue that the trial court erred in sustaining Multidata's and the Canadian Defendants' motions for dismissal because they failed to sustain their burden of proof that trying this case in Missouri would be substantially more inconvenient than trying the case in Panama. In other words, Plaintiffs contend that the trial court's determination with regard to the *Riederer* factors errone-

---

6. We also note that Canadian Defendants, whose attorneys filed stipulations on their behalf stating they would honor a judgment of the Panama courts, also have no assets in the United States. Thus, Plaintiffs may be unable to attach their assets to a judgment in Missouri and could face the same difficulty collecting from Canadian Defendants in this jurisdiction as they would in Panama.

ously weighed in Multidata and the Canadian Defendants' favor.

■ The first factor the trial court must consider is the place of accrual of the cause of action. Relying on *Dzur v. Gaertner*, 657 S.W.2d 35, 36 (Mo.App.1983), Plaintiffs argue that the cause of action for this case accrued in Missouri because that is the state where the "wrong complained of was committed." Contrary to Plaintiffs' assertion, under Missouri law, a cause of action accrues when and originates where damages are sustained and capable of ascertainment. *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. banc 1984); *see also Acapolon*, 827 S.W.2d at 193 (finding that the claim accrued and the damage occurred in Guatamala even though plaintiffs alleged that decision-making for defective product occurred in Missouri and relevant witnesses were located in Texas). Plaintiffs do not dispute that they sustained their injuries in Panama.

Plaintiffs further argue that, based on choice of law analysis under the Restatement (Second) of Conflicts of Law section 145 (1971), the trial court should look to the place where a defendant's conduct occurred. However, Plaintiffs fail to explain why choice of law analysis applies to the question of whether a case should be dismissed for forum non conveniens. In addition, Plaintiffs focus heavily on the choice of law factor of where a defendant's conduct occurred without mentioning that another consideration required in choice of law analysis is the place of injury. *See Nelson v. Hall*, 684 S.W.2d 350, 351–52 (Mo.App.1984) (listing, among other factors, that courts should consider the *place where the injury occurred and* the place where the conduct causing the injury occurred for a choice of law analysis) (emphasis added). Thus, since the cause of action accrued when Plaintiffs and Plaintiffs' decedents were over-exposed to radi-

ation at the ION, this factor weighs in favor of dismissal.

■ The second factor is the location of witnesses. The parties dispute how many witnesses will be required and where they are located. In particular, Plaintiffs argue that this case will likely be severed and that the trial court should have assumed that fewer witnesses would be required. However, Plaintiffs have not presented any evidence demonstrating that any of the Plaintiffs have agreed to allowing an initial plaintiff to try a "single case" and potentially influence the remaining plaintiffs' chance of recovery. Moreover, even assuming the trial court would allow severance, a number of witnesses from Panama would still be required to show whether the oncology team's conduct at the ION will impact on Multidata and the Canadian Defendants' liability and to prove Plaintiffs' damages. Moreover, the location of the ION witnesses in Panama prevents the Multidata and the Canadian Defendants from adding them as third parties because they have no contacts with Missouri. The inability to implead responsible third parties as third-party defendants is a factor which weighs heavily in favor of dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The trial court did not abuse its discretion in weighing this factor in favor of Multidata and the Canadian Defendants.

The trial court must then consider the residence of the parties. It is undisputed that only one party resides in Missouri—Multidata—and that the remaining parties reside in Panama, Canada, or another state. This factor clearly weighs in favor of Multidata and the Canadian Defendants, especially in light of the Missouri Supreme Court's reasoning in *Acapolon* where it stated that the factor of residence of one defendant in Missouri is not inevitably con-

trolling when there are other nonresident defendants. 827 S.W.2d at 193.

The fourth factor the trial court must consider is whether there is any nexus with the place of suit. While Plaintiffs are correct that this case has some nexus with Missouri since Multidata does business here, they are incorrect in stating that "[t]his is not a weighing test." As stated in *Anglim*, trial courts necessarily have discretion to weigh the factors to be considered in applying the doctrine of forum non conveniens. Again, the trial court did not abuse its discretion in finding that the presence of Multidata in Missouri was not controlling.

The fifth is the public factor of the convenience to and burden upon the court. Public factors include administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252. Burdens on the trial court in this case include: the need for language interpretation, since all but one of the Plaintiffs speak Spanish and all of the patients medical records are in Spanish, that the trial court will inevitably deal with issues of conflicts of law and will likely be required to apply Panamanian law to many of Plaintiffs' claims, that trial in Missouri is not an efficient use of the courts since Multidata and the Canadian Defendants cannot implead third parties at ION and will be required to file a separate action in Panama if this case were to proceed, and that Panama has a strong interest in protecting its citizens from injury due to defective products used within its borders. As the court stated in *Acapolon*, "Missouri's interest in assuring that its corporations comply with adequate design standards when designing products for manufacture and use abroad is less substantial than the foreign nation's interest in protecting its citizens from injury and setting standards for the manufacture and distribution of products within its borders." 827 S.W.2d at 194. The trial court did not abuse its discretion in determining that the public factors weigh in favor of dismissal.

Finally, the court must consider the availability to the plaintiff of another court with jurisdiction of the cause of action affording a forum for the plaintiff's remedy. We already addressed this issue in our disposition of Plaintiffs' first three points, and accordingly, we find that the trial court did not abuse its discretion in determining that Panama provides an adequate and available forum based on its consideration of the *Riederer* factors.

In addition to discussing the *Riederer* factors, Plaintiffs further contend that Multidata and the Canadian Defendants have failed to show that Missouri is substantially inconvenient, that the trial court failed to make findings of fact to justify its exercise of discretion, and that the nature of this case with issues involving computer programming and complex mathematical, engineering and physics calculations argues in favor of retaining the case in Missouri. Beginning with their first contention, Plaintiffs rely primarily on Missouri cases where all the parties were United States citizens and the alternative forums were located in other states. *See Longshore v. Norville*, 93 S.W.3d 746 (Mo.App. 2002); *State ex rel. Kansas City Southern Ry. Co. v. Mauer*, 998 S.W.2d 185 (Mo. App.1999); and *Taylor v. Farmers Ins. Co.*, 954 S.W.2d 496 (Mo.App.1997). Plaintiffs emphasize that these cases highly fa-

vor a plaintiff's choice of forum absent fraudulent procurement, which occurs when the plaintiff's chosen forum is unrelated to the cause of action, the plaintiff's residence, and the defendant's office or residence. *See, e.g., Taylor,* 954 S.W.2d at 501. Plaintiffs also try to make a distinction between this case and *Acapolon,* which accords less deference to the plaintiff's choice of forum where the case is brought by a foreign national and in which the bulk of the operative facts took place in a foreign nation. 827 S.W.2d at 192. However, even though this case does not involve exactly the same facts that were present in *Acapolon,* its reasoning applies here rather than the cases Plaintiffs cite because, as the Supreme Court stated in *Acapolon,* a case which has predominant foreign elements is distinguishable from all other Missouri forum non conveniens cases.[7] *Id.*

As to Plaintiffs' argument regarding findings of fact and conclusions of law, Plaintiffs did not request that the trial court issue findings of fact and conclusions of law and thus the trial court was not required to do so. Rule 73.01(c).[8] We find no basis for assuming that the trial court did not issue findings of fact and conclusions of law because the facts did not support its judgment. Rather, we assume that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the trial court's result. *Id.*

Plaintiffs' final argument that a jury in Missouri is better equipped to understand complex or technical issues than a Pana-

manian judge also fails. Considering the number of factors that weigh in favor of dismissal and that the technical language used for computer programming will be difficult for anyone to understand, the trial court did not abuse its discretion in dismissing the action notwithstanding the complexity of the issues raised. Plaintiffs' fourth point is denied.

The judgment is affirmed.[9]

LAWRENCE E. MOONEY, P.J., and MARY K. HOFF, J., Concurs.

---

7. We acknowledge that at least one living Plaintiff is a United States national, but do not find that this fact lessens the applicability of *Acapolon* in light of the nationality of the other 100 plus Plaintiffs.

8. All references to Rules are to Mo. R. Civ. P.2005.

9. Plaintiffs' post-argument motion to remand or, alternatively, to reverse the trial court's ruling under Rule 84.14 is denied. Plaintiffs' motion to dismiss this appeal is also denied.